UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CYNTHIA GRANGER,                     )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        No. 1:23-cv-01548-JPH-TAB
                                     )
CITY OF ANDERSON TRANSIT SYSTEM,     )
                                     )
                Defendant.           )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Cynthia Granger alleges that while she was working as a bus driver for the City of Anderson Transit System ("CATS"), CATS discriminated against her based on her sex and race, subjected her to a hostile work environment, and retaliated against her. CATS has filed a motion for summary judgment. Dkt. [40]. For the reasons below, that motion is **GRANTED.**

**I.**
**Facts and Background**

Because CATS has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Ms. Granger, a Black woman, began working for CATS as a bus driver in 2011. Dkt. 49-1 at 269. Her direct supervisors were Jim Carpenter, a white male, and Barbara Johnson, a white woman. *Id.* at 38–40. Ms. Granger is a member to the American Federation of State, County, and Municipal Employees

Union Local 1913 ("AFSCME").   *Id.* at 61.   CATS has a Collective Bargaining Agreement ("CBA") with AFSCME.   Dkt. 49-6.

### A. Ms. Granger's disciplinary history and grievances

Ms. Granger filed two union grievances in late 2018, stating that CATS treated her differently based on her "color" and sex.   Dkt. 49-12 at 1–2.   And in May 2019, Ms. Granger emailed the president of her union local to report that Mr. Williams yelled at her and acted in a hostile, harassing, and intimidating manner towards her.   Dkt. 49-13.

In March 2021, Ms. Granger left her assigned bus unattended for more than five minutes without the flashers on, and without notifying the terminal or dispatcher of her absence.   Dkt. 49-7.   CATS gave Ms. Granger a "2nd Offense," which resulted in a written warning, under the union CBA's progressive disciplinary policy governing "minor infractions" of the CBA and work rules. Dkts. 49-1 at 67; 49-6 at 29–31; 49-7.   It is unclear why Ms. Granger received a "2nd Offense," and not "1st Offense" under the policy, as she did not have a prior offense in her record.   Dkts. 49-1 at 67; 49-8.

Ms. Granger thereafter submitted a grievance to reduce the discipline to a "1st Offense" under the progressive disciplinary policy.   Dkt. 49-1 at 57.   Under that policy, CATS "will not take into consideration a prior disciplinary action occurring more than one (1) year from the date of the offense for which disciplinary action is contemplated," dkt. 49-6 at 30, and Ms. Granger argued that she had not been disciplined in the prior year, dkt. 49-1 at 57.   The union board responsible for assessing her grievance rejected her grievance.   Dkt. 49-8.

On April 8th, 2021, Ms. Granger was disciplined for failing to report to work for mandatory overtime, resulting in a one-day suspension. Dkt. 49-1 at 90–92. Later that month, Ms. Granger was disciplined for insubordination for not listening to her supervisor Barabara Johnson's instructions to stay after her shift for a meeting. Dkt. 41-8 at 1. This discipline resulted in a three-day suspension. Dkt. 49-1 at 126.

Also in spring 2021, another bus driver—Tim Stanley—had a disagreement with Ms. Granger about seniority and bus route bidding at a union meeting. Dkt. 49-1 at 229–31. After Mr. Stanley said to Ms. Granger, "I called you a witch, you bitch," she reported this incident to Leo Williams, CATS's Director of Operations, but he took no action in response. Dkt. 49-2 (Granger Aff. at 1 ¶ 8).

In August 2021, a passenger left a complaint with Mr. Williams about another bus driver. Dkt. 49-1 at 225. Mr. Williams tried to call the passenger back, but she did not answer. *Id.* at 227. Her voicemail, however, recorded a discussion between Mr. Williams and Merle Jones, CATS's General Manager. *Id.* at 44, 228. Mr. Jones remarked that he thought he heard the message refer to "Cynthia," and Mr. Williams responded, "No, I don't think it's that Cynthia." *Id.* at 228. Mr. Jones then said, "Yeah, it is, the witch. I'd just hang up on the bitch." *Id.* The passenger sent a recording of this conversation to Ms. Granger. *Id.* at 224. Ms. Granger reported Mr. Jones's statement to Jake Brown, CATS's Human Resources Representative, but Mr. Brown took no action in response. Dkt. 49-2 (Granger Aff. at 2 ¶ 10).

On Ms. Granger's January 5, 2022, route, a passenger holding her child fell out of her seat. Dkt. 49-1 at 147–48. Ms. Granger pulled over and verbally reported the incident to dispatch. *Id.* at 148. She also told her supervisor that she was preparing an "Accident Report Card." *Id.*; dkt. 49-10. Ms. Granger submitted the accident report card on January 13th after she realized she had not turned it in yet. Dkt. 49-1 at 148; dkt. 49-9. The same day, CATS received a complaint from the passenger requesting that CATS pay her medical bills. Dkt. 41-10 at 2; dkt. 41-11. CATS suspended Ms. Granger for five days without pay because she failed to complete the accident report in the required time and failed "to immediately report any accident or injury involving any City employee, equipment, or property." Dkt. 49-9. This was her "5th offense" under the progressive disciplinary policy. *Id.*; dkts. 49-1 at 155; 49-6 at 30.

In December 2022, Ms. Granger called over the radio that she was going to assist a passenger, but two white bus drivers mocked her over the radio and interrupted her. Dkt. 49-1 at 160–61.

### B. Ms. Granger's use of personal sick time for medical treatment

On August 12, 2022, Ms. Granger fell on the broken bottom step of a bus and told her supervisor Jim Carpenter that she needed medical treatment for the fall. Dkt. 49-2 (Granger Aff. at 1 ¶ 5). Mr. Carpenter told Ms. Granger to clock out and use personal sick time to obtain medical treatment. *Id.* at ¶ 6.

### C. Conduct of Ms. Granger's co-worker

Randy Wiggins, a white man, also worked as a bus driver for CATS. *See* dkt. 49-1 at 132–33. In June 2021, while driving a bus out of the CATS garage,

Mr. Wiggins ran over a "No Parking" sign, damaging both the sign and the bus. *Id.* at 133; *see also* dkt. 49-11 at 1–5 (pictures of the bus and sign).  Ms. Granger heard a CATS mechanic call Mr. Wiggins over the radio to tell him that he had hit the sign and that bus parts were lying on the ground.  Dkt. 49-1 at 134.  Mr. Wiggins responded to the mechanic that he "was going to report it," but did not stop.[1]  *Id.*

Then, in July 2022, Mr. Wiggins drove a CATS "Nifty Lift" commercial van through a parking lot and damaged the van by crashing it into a pole.  *Id.* at 138–39; dkt. 49-11 at 6–7 (pictures of the van).  Ms. Granger heard Mr. Wiggins report the incident to a CATS supervisor over the radio.[2]  Dkt. 49-1 at 138–39.  The CBA lists "Destruction of City property" as a dischargeable offense.  Dkt. 49-6 at 30.

### C. Procedural history

In September 2022, Ms. Granger filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination, retaliation, and hostile work environment.  Dkt. 41-1 at 1.  In May 2023, the EEOC issued a "right to sue" letter to Ms. Granger.  Dkt. 41-2.  In August 2023, Ms. Granger brought this action, alleging that CATS discriminated against her based on her sex and race, subjected her to a sex- and race-based

---

[1] CATS argues that these statements are inadmissible hearsay.  Dkt. 58 at 4–5. However, these statements are admissible for their truth as an admission of CATS's "employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D); *see also Baines v. Walgreen Co.*, 863 F.3d 656, 662–63 (7th Cir. 2017) (holding statement from one of defendants' employees to another employee was admissible under Rule 801(d)(2)(D) as a statement of a party opponent's employee).
[2] CATS does not contest the admissibility of this statement.

hostile work environment, and retaliated against her for engaging in a protected activity. Dkt. 1. CATS has moved for summary judgment. Dkt. 40.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

Ms. Granger brings three claims against CATS, alleging: (1) disparate treatment based on race and sex, (2) hostile work environment based on race and sex, and (3) retaliation. Dkt. 1 at 3–5.

### A. Disparate treatment

Title VII makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's race [or] . . . sex." 42 U.S.C. 2000e-2(a)(1). "[T]he singular question that matters in a discrimination case" is

6

"whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–66 (7th Cir. 2016)). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself. . . . Relevant evidence must be considered and irrelevant evidence disregarded." *Id.*

A plaintiff may organize and present evidence using the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Johnson*, 892 F.3d at 894–95. But "[t]here is no magic to this test; it is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's race or other proscribed factor." *Id.* at 894.

Here, Ms. Granger proceeds under the *McDonnell Douglas* approach. Dkt. 50 at 10–11. To establish her prima facie case, she must show that she (1) belonged to a protected class, (2) met CATS's legitimate expectations, (3) suffered an adverse employment action, and (4) was similarly situated to other employees who were not members of the protected class and who were treated better. *McDonnell Douglas Corp.*, 411 U.S. at 802. If Ms. Granger makes out a prima facie case, the burden shifts to CATS to give a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If CATS does so, the burden shifts

back to Ms. Granger to present evidence that the defendant's explanation was pretext for unlawful discrimination. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017).

### 1. Prima facie case

CATS argues that Ms. Granger cannot show that she was subjected to an adverse employment action and that she has not designated evidence sufficient to show that a similarly situated employee outside her protected class was treated more favorably. Dkt. 42 at 11–12; dkt. 58 at 1–7.

### a. Materially adverse action

CATS argues that the March 2021 written reprimand was not an "adverse action" actionable under Title VII. Dkt. 58 at 3 n.1.

"[A] documented reprimand alone is not an adverse action 'absent some tangible job consequence.'" *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1119 (7th Cir. 2022) (quoting *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998)). And "oral or written reprimands received by an employee under an employer's progressive discipline system do not implicate job consequences tangible enough to establish an independent basis for Title VII liability." *Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023) (citing *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001), *rev'd on other grounds*, *Ortiz*, 834 F.3d 760).

Here, the designated evidence does not show that the March 2021 reprimand was an actionable adverse employment action. Although Ms. Granger's March 2021 written reprimand moved her further along the progressive discipline system, dkt. 49-1 at 55, a reprimand that does not result

in "any immediate consequence . . . such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities" is not an adverse action actionable under Title VII. *Fuller*, 84 F.4th at 690; *see also Oest*, 240 F.3d at 613. Thus, her March 2021 "2nd offense" is not an adverse action actionable under Title VII.[3]

Therefore, the January 2022 suspension is the only actionable adverse employment action identified by Ms. Granger that could support her disparate treatment claim. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009).

### b. Similarly situated employee

CATS next argues that it is entitled to summary judgment because Ms. Granger has not designated evidence to identify a "similarly situated" comparator under the *McDonnell Douglas* framework. Dkt. 58 at 1–7.

In this context, a comparator is another employee outside the protected class who engaged in similar conduct but was "subject [] to less severe discipline" for that conduct. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013). "A suitable comparator is an employee who is directly comparable to the plaintiff in all *material* respects." *Palmer v. Ind. Univ.*, 31 F.4th 583, 590 (7th Cir. 2022). "There must be 'enough common factors' between the plaintiff and his comparator 'to allow for a meaningful comparison.'" *Id.* at 590 (citing *Warren v. Solo Cup Co.*, 516 F.3d 627, 630–31 (7th Cir. 2008)). "[W]hether employees are

---

[3] For this reason, the Court need not address CATS's argument that the minutes from the hearing where the union upheld this "2nd offense" are inadmissible and don't support an inference of disparate treatment. Dkt. 58 at 2–4.

similarly situated is a 'flexible, common-sense, and factual' inquiry." *David*, 846 F.3d at 225 (citing *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012)). Factors that can guide the inquiry include "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications." *Crain v. McDonough*, 63 F.4th 585, 592 (7th Cir. 2023).

Here, Ms. Granger identifies two comparators: Randy Wiggins and Warren Lane. Dkt. 50 at 3–4. CATS argues that neither is a suitable comparator. Dkt. 58 at 1–7.

## A. Randy Wiggins

Ms. Granger states that CATS discriminated against her based on her race and sex when it disciplined her for failing to promptly report an incident where a passenger fell on her bus. Dkt. 50 at 4–5. Ms. Granger argues that Randy Wiggins, a white male, was treated more favorably than her when he was not disciplined after failing to immediately report that he ran over a "No Parking" sign and separately when he drove a Nifty Lift van into a pole, totaling the vehicle. *Id.*

It's undisputed that Mr. Wiggins had the same position and supervisor as Ms. Granger and was subject to the same disciplinary policy. CATS argues that Ms. Granger has not designated evidence to show that Mr. Wiggins engaged in materially similar conduct to her, so he cannot be used as a comparator. Dkt. 58 at 4–7.

10

Ms. Granger must show that Mr. Wiggins "engaged in similar conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Anderson v. Street*, 104 F.4th 646, 653 (7th Cir. 2024) (internal citations omitted). Ms. Granger first argues that Mr. Wiggins engaged in similar conduct when he failed to immediately report that he ran over a sign. Dkt. 50 at 5. She designates her deposition testimony regarding a conversation she heard between Mr. Wiggins and a CATS mechanic where the mechanic said to Mr. Wiggins, "You just ran down a sign and there are parts of the bus laying in the grass here," and Mr. Wiggins responded, "Oh, yeah. I was going to report that." Dkt. 49-1 at 133–34.

The designated evidence shows that Ms. Granger's suspension under the progressive disciplinary policy was imposed for "[f]ailure to complete accident report in prescribed time" and "[f]ailure to immediately report any accident or injury involving any City employee, equipment, or property." Dkt. 41-10 at 1. Regarding Mr. Wiggins' incidents, Ms. Granger has not designated evidence showing that he also failed to complete accident report in prescribed time, whether or when he reported the accidents to management, what management knew about the circumstances surrounding those incidents, or whether Mr. Wiggins was disciplined for either incident.[4]  *See* dkt. 50 at 4–5. Without this

---

[4] Although Ms. Granger states in her briefings that "when Defendant produced Wiggins's personnel file as part of discovery, it did not contain an accident report card or any record of discipline for either of the two incidents," dkt. 50 at 6, she has not designated corresponding evidence. As the evidentiary record does not substantiate this statement as required, the Court does not consider it. S.D. Ind. L.R. 56-1; *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("The district court is within its discretion to strictly enforce compliance with its local rules regarding summary-

critical information, which could be mitigating or differentiating, Ms. Granger's deposition testimony does not establish that Mr. Wiggins "had a comparable set of failings." *Abrego v. Wilkie*, 907 F.3d 1004, 1013 (7th Cir. 2018) (holding that plaintiff's offered comparator was not similarly situated because he "fail[ed] to show that [the coworker] had the same shortcomings").

Similarly, Ms. Granger has not designated evidence showing what CATS management knew about Mr. Wiggins's accidents and whether and when he may have reported them. In contrast, the designated evidence shows that CATS management knew the facts and circumstances surrounding Ms. Granger's incident, including that a passenger went to the hospital for medical treatment. Dkt. 41-10 at 1–2 (discipline notice and memo from Jim Carpenter). The designated evidence further shows that CATS management knew when and how Ms. Granger reported the accident and that based on those facts, CATS management found her sufficiently culpable to warrant disciplinary action. *Id.* With no designated evidence showing what CATS's management knew of the facts and circumstances surrounding Mr. Wiggins's accidents, including whether and when he reported them and whether management concluded that he was sufficiently culpable as to warrant discipline, it's impossible to

---

judgment motions."). Indeed, Plaintiff's designated evidence in opposition to summary judgment, dkt. 49, consists of exhibits and an appendix identifying them. There are no cites to any pages of any exhibits. Moreover, the appendix does not include any records purporting to be from Mr. Wiggins's "personnel file", written discovery responses from Defendant about whether Mr. Wiggins was disciplined for either incident, or depositions of Mr. Wiggins or any CATS management with knowledge as to whether and when Mr. Wiggins reported those incidents, management's evaluations of the facts and circumstances surrounding those incidents, and whether Mr. Wiggins was disciplined.

meaningfully compare management's treatment of Mr. Wiggins to its treatment of Ms. Granger.  *See Anderson*, 104 F.4th at 653 (finding that plaintiff did not meet the comparator burden when plaintiff "cite[d] only her own deposition testimony that customers complained to her more than once about [comparator's] conduct" and she did not "present evidence or even allege that management knew").

Ms. Granger also argues that Mr. Wiggins was treated more favorably than her because his accidents could be classified as "Destruction of City property," which is listed as a "dischargeable offense" under CATS's CBA.  Dkts. 50 at 5; 49-6 at 30 (collective bargaining agreement).  Ms. Granger was disciplined for failing to report an incident where a passenger fell on her bus and required medical treatment.  Dkt. 49-9 at 1.  Mr. Wiggins had two accidents that damaged the vehicles he was driving, but no passengers were involved.  Dkts. 49-1 at 153 ("No, he did not have any passengers on the bus."); 49-5 (Granger Interrogatories at 1–2); 49-11 (pictures of busses after Mr. Wiggins's accidents).  So, the underlying incidents that Ms. Granger asks the Court to use as comparator evidence are not "directly comparable . . . in all material respects."  *Coleman*, 667 F.3d at 846; *see also Bless v. Cook County Sheriff's Off.*, 9 F.4th 565, 576 (7th Cir. 2021) (stating that an offered comparator is not suitable when "there are clear differences between [plaintiff's] actions and those of the proposed comparators").

Ms. Granger has therefore not "isolate[d] the critical independent variable—discriminatory animus."  *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800,

13

810 (7th Cir. 2025). In conclusion, Mr. Wiggins is not a suitable comparator. *See Nigro v. Ind. Univ. Health Care Assoc's, Inc.*, 40 F.4th 488, 493 (7th Cir. 2023) (affirming summary judgment grant that coworkers were not similarly situated because plaintiff did not point to a coworker that engaged in similar conduct and had similar conduct-related complaints).

### B. Warren Lane

Ms. Granger also identifies Warren Lane as a comparator, stating that she was forced to use personal sick time to seek medical treatment after an injury at work, while Mr. Lane, a white male, did not have to use personal sick time to treat an injury that occurred at work. Dkt. 50 at 3. In support, Ms. Granger states in her brief that Mr. Lane told her he was "leaving to go to the doctor and would return after that appointment" after he was injured at work. *Id.* In comparison, Mr. Carpenter told Ms. Granger that she needed to clock out and use personal sick time to seek medical care for an injury that occurred at work. Dkt. 49-2 (Granger Aff. at 1 ¶ 5–6).

The problem, however, is that Ms. Granger does not designate evidence that Mr. Lane was permitted to go to a medical appointment after being injured at work without using personal sick time. *See generally* dkt. 50 at 3. In support of Mr. Lane being treated more favorably than her, Ms. Granger cites to page 11 of dkt. 49-5. *Id.* But this page does not exist; there are only two pages of Ms. Granger's interrogatory responses, dkt. 49-5. Ms. Granger has not designated admissible evidence regarding Mr. Lane, so no reasonable jury could find that he was treated more favorably than her.

14

### 2. Pretext

Even if Ms. Granger could make out a prima facie case for race or sex discrimination under the *McDonnell Douglas* framework, she has not designated evidence that rebuts CATS's stated legitimate reasons for disciplining her. Under *McDonnell Douglas*, once CATS "articulate[d] a legitimate, nondiscriminatory reason for the adverse employment decision," Ms. Granger "must provide evidence establishing a genuine dispute about whether the employer's stated reason was a pretext for prohibited discrimination." *Anderson*, 104 F.4th at 653 (internal citations omitted). "A pretext is a lie, specifically a phony reason for some action, not just faulty reasoning or mistaken judgment." *Mitchell*, 143 F.4th at 811 (internal citations omitted).

Here, CATS provided a legitimate, nondiscriminatory reason for Ms. Granger's five-day suspension. Dkt. 42 at 11–12. CATS management disciplined Ms. Granger for her failure to immediately report that a passenger fell on her bus and failure to timely submit the required written accident report. Dkt. 49-9 at 1.

To meet her burden, Ms. Granger must "demonstrat[e] by a preponderance of evidence that the stated reasons for her [discipline] were *false*, not that they were unfair or baseless." *Anderson*, 104 F.4th at 653. She has not done so. Ms. Granger does not even argue that CATS's discipline was pretextual. *See* dkt. 50 at 11–12. She only argues that she was disciplined for not reporting an incident promptly while Mr. Wiggins was not. *Id.* "[C]omparator evidence can do 'double-duty' at both the prima facie and pretext stages." *Coleman*, 667 F.3d at 858.

However, as discussed above, Mr. Wiggins is not a suitable comparator because there's no designated evidence that can be used to do a meaningful comparison. Ms. Granger's comparison to Mr. Wiggins therefore does not create a genuine issue of material fact as to pretext. *See Brooks v. Avancez*, 39 F.4th 424, 437 (7th Cir. 2022) ("Brooks' examples do not provide apt comparisons to her conduct, nor do they offer sufficient evidence of pretext.").

 Ms. Granger has not met the burden of showing that the reasons given for her suspension were false.  Ms. Granger admits that she did not submit an accident report card until "a week later, maybe seven to ten days later," but CATS's company rules require the report to be turned in "as soon as possible, like the same day, maybe the next day." Dkt. 49-1 at 148.  So, Ms. Granger's testimony corroborates the reasons given in the designated evidence for her suspension.  *See* Dkt. 49-9 at 1.

In sum, Ms. Granger has not designated comparator and pretext evidence sufficient to meet her burden under the *McDonnell Douglas* framework.  Under that approach, no reasonable jury could find that CATS discriminated against Ms. Granger based on her sex or gender when it suspended her.

### C. *Ortiz*'s Holistic Approach

In *Ortiz*, the Seventh Circuit instructed district court to focus in employment discrimination cases on "the only question that matters: when looking at the evidence as a whole, 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment

16

action." *Brooks*, 39 F.4th at 433 (quoting *Ortiz*, 834 F.3d at 765); *see also Vega v. Chi. Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020) ("What matters is whether she presented enough evidence to allow the jury to find in her favor."). Here, the answer is no.

Ms. Granger argues that CATS discriminated against her because of her sex and race when it: (1) required her to take personal sick time to receive medical care for an injury that occurred at work, dkt. 50 at 3, and (2) suspended her for failing to report a passenger who fell and was injured while on her bus. *Id.* at 4–6.

Viewing the designated evidence as a whole, no reasonable jury could conclude that CATS's actions were because of Ms. Granger's race and sex. Ms. Granger did not designate any evidence showing that Mr. Lane or other co-workers were allowed to leave work for medical attention without using personal sick time. *See generally* dkt. 50 at 3. As for the suspension, Ms. Granger didn't designate sufficient evidence of Mr. Wiggins's accidents to be able to meaningfully compare CATS's treatment of him to its treatment of her. And she designated no evidence that CATS's stated reasons for suspending her were contrived. Dkts. 49-9 at 1; 49-1 at 133.

Missing from the designated evidence is any evidence of the facts and circumstances surrounding Mr. Wiggins's collisions, what management knew, who made the decisions as to whether Mr. Wiggins would be disciplined, and importantly, if Mr. Wiggins was disciplined. So, from the totality of evidence provided, no reasonable jury could find that CATS discriminated against Ms.

17

Granger based on her race or sex when it required her to use personal time to treat a medical condition and suspended her for failing to report an accident involving an injured passenger on her bus. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958–59 (7th Cir. 2021) (finding under the *Ortiz* framework that no disparate treatment occurred when employee "recite[d] a litany of past wrongs purportedly probative of race or sex discrimination," but the record did not show that race or sex had a role in his termination).

In sum, viewing the designated evidence as a whole, no reasonable jury could find that CATS discriminated against Ms. Granger based on her sex or race. Therefore, CATS's motion for summary judgment on the disparate treatment claim is **granted.**

### B. Hostile work environment

CATS argues that it is entitled to summary judgment on Ms. Granger's hostile work environment claim because the conduct that she identified was not severe or pervasive. Dkt. 42 at 14–15.

To be actionable under Title VII, sexual or racial harassment must be severe or pervasive enough to affect the terms and conditions of the plaintiff's employment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998); *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). At summary judgment, Ms. Granger must designate evidence from which a trier of fact could conclude that (1) she was subject to unwelcome harassment, (2) the harassment was based on her sex and/or race, (3) the harassment was so severe or pervasive as to alter the conditions of her employment and create a hostile working

18

environment, and (4) there is a basis for employer liability. *Johnson*, 892 F.3d at 900; *see also Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 636 (7th Cir. 2019).

Ms. Granger identifies three incidents in support of her hostile work environment claim: (1) Mr. Stanley calling her a "bitch" to her face in either March or April 2021; (2) Mr. Jones referring to her a "bitch" outside her presence in August 2021; and (3) other bus drivers mocking her over the radio system in December 2022.[5] Dkt. 50 at 6–7. For the last incident, Ms. Granger does not even say what the other drivers supposedly said or otherwise explain how their comments implicated her sex or race, *see id.* at 13–15, so this incident does not support her hostile work environment claim, *see Scaife*, 49 F.4th at 1117 (requiring plaintiff to show incidents "were based on gender"). So, the remaining question is whether the first two incidents—where Ms. Granger's general manager and co-worker called her a "bitch"—add up to a hostile work environment.[6]

Ms. Granger must show that the discriminatory conduct was objectively severe or pervasive, considering the totality of the circumstances. *Scaife*, 49 F.4th at 1115. This includes "(1) the frequency of the discriminatory conduct;

---

[5] CATS contends that the incident with Mr. Stanley and the radio incident with the bus drivers cannot be considered because she did not include these incidents in her EEOC charge or her complaint. Dkt. 58 at 8–11. The Court assumes without deciding that Ms. Granger has properly raised these incidents here and thus considers them in evaluating whether a reasonable jury could find a hostile work environment. *See Fort Bend County v. Davis*, 587 U.S. 541, 543 (2019) (holding Title VII's charge-filing precondition is not a jurisdictional requirement).

[6] The Court assumes without deciding that the use of the term "bitch" in these contexts was sex-based.

(2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim." *Id.*

CATS argues that Mr. Jones calling Ms. Granger a "bitch" one time is not severe or pervasive enough to create a hostile work environment. Dkt. 42 at 15. Ms. Granger responds that along with this incident, Mr. Stanley also called Ms. Granger a "bitch" to her face, and those actions were "well beyond abusive and would likely be abusive by any reasonable person's standards." Dkt. 50 at 14.

Here, the designated evidence shows that at most, Ms. Granger was called a "bitch" twice. Dkt. 49-1 at 228, 230. There is "no magic number of incidents required to establish a hostile environment." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). However, the Seventh Circuit has consistently required more than two sex-based comments to show a hostile work environment. *See Patt v. Fam. Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding "eight gender-related comments" over plaintiff's multi-year employment "were too isolated or sporadic to constitute severe or pervasive harassment"); *Mercer v. Cook County*, 527 F. App'x 515, 521 (7th Cir. 2013) (collecting cases and holding sexually explicit graffiti and eight other incidents— including being called "bitch" twice—was not severe or pervasive enough); *cf. Boumehdi*, 489 F.3d at 786–89 (7th Cir. 2007) (holding "at least eighteen sex-based comments" over ten months was severe and pervasive enough to survive summary judgment). So, while "[t]here is no question that gender-based

20

comments and epithets, when used pervasively in the workplace, can meet the standard for severe or pervasive harassment," *Passananti v. Cook Cnty.*, 689 F.3d 655, 668 (7th Cir. 2012), the designated evidence here that she was called or referred to as a "bitch" twice over the course of Ms. Granger's multi-year employment with CATS weighs against finding that she was subjected to a hostile work environment.

Further, nothing in the designated evidence suggests Mr. Stanley's and Mr. Jones's remarks were related. Instead, they were isolated incidents and offhand comments that do not amount to a hostile work environment. *See Patt*, 280 F.3d at 754; *see also Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 431 (7th Cir. 1995) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage."). Here, Mr. Stanley and Mr. Jones' use of the term "bitch" to refer to Ms. Granger occurred months apart from each other. Dkt. 49-1 at 228, 230. And the incidents occurred in different contexts, with Mr. Stanley speaking directly to Ms. Granger after a union meeting and Mr. Jones saying it on a voicemail recording to a third party. *Id.* That weighs further against finding that Ms. Granger endured a hostile work environment.

Moreover, neither incident involved Ms. Granger's direct supervisor calling her a "bitch." Dkt. 49-1 at 228. "The conduct of a non-direct supervisor or a department lead . . . should undoubtedly be given more weight than an employee's co-equal." *Scaife*, 49 F.4th at 1117 (discussing use of racial slurs). But "a harasser who has direct supervisory control over an employee continues

to maintain more weight in the analysis" than either a non-direct supervisor or a co-equal. *Id.* Although Mr. Jones was a supervisor at CATS, the designated evidence shows that he had a non-direct supervision role over Ms. Granger, as Jim Carpenter and Barbara Johnson were her direct supervisors. *See* dkt. 49-1 at 38. So, that lack of direct supervisory control by either Mr. Jones or Mr. Stanley is yet "another weakness" in Ms. Granger's claim. *Scaife*, 49 F.4th at 1117 (holding department lead's use of racial epithet outside plaintiff's presence was not severe enough to survive summary judgment); *Anderson,* 104 F.4th 646 (affirming summary judgment for defendants because manager calling employee a "bitch" did not amount to a severe and pervasive work environment).

Finally, Mr. Jones also did not call Ms. Granger a "bitch" to her face. Dkt. 49-1 at 228. "[R]emarks that are stated directly to the plaintiff weigh heavier than when a plaintiff hears them secondhand." *Scaife*, 49 F.4th at 1116 (discussing secondhand racial epithet). Ms. Granger learned about Mr. Jones' comment secondhand from a passenger's voicemail. Dkt. 49-1 at 224. For that reason, Mr. Jones' comment carries less weight than it would if, for example, Mr. Jones called Ms. Granger a bitch in the presence of her and other employees.

In sum, Ms. Granger has not designated evidence from which a reasonable jury could conclude she was subjected to conduct objectively severe or pervasive enough to constitute a sex-based hostile work environment.[7] Ms. Granger also

---

[7] For that reason, the Court need not address Ms. Granger's argument that she subjectively perceived her colleagues' conduct as abusive, dkt. 50 at 14–15, or CATS's other arguments for why Ms. Granger did not endure a hostile work environment, dkt. 42 at 14–15.

does not designate evidence or offer any explanation as to how the incidents she raises relate to her race, so she has not met her burden as to any race-based hostile work environment claim, either.[8]    Accordingly, CATS's motion for summary judgment as to Ms. Granger's hostile work environment claims is **granted**.

### C. Retaliation

CATS argues that it is entitled to summary judgment on Ms. Granger's retaliation claim because she has not shown a causal connection between protected activity and an adverse employment action.  Dkt. 58 at 12.

To survive summary judgment on this claim, Ms. Granger must designate evidence of: "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

It's undisputed that Ms. Granger engaged in protected activity when she: (1) filed two union grievances in late 2018 stating that CATS treated her differently based on her "color" and sex; and (2) sent an email in May 2019 to the president of her union local to report Mr. Williams' behavior toward her.  Dkt. 50 at 16–17.  As with her disparate treatment claim, Ms. Granger offers her March 2021 written reprimand and January 2022 suspension as adverse actions supporting her retaliation claim.  Dkt. 50 at 18.  But, as explained above, her

---

[8] Because Ms. Granger has not designated evidence in which a reasonable jury could conclude she was subjected to objectively severe or pervasive conduct and that it relates to her race or sex, the court need not address the fourth element of a hostile work environment of whether there is employer liability.

March 2021 written reprimand is not an "adverse action" under Title VII. So, for the purpose of her retaliation claim, the only adverse action is her January 2022 suspension.

CATS argues that Ms. Granger has not shown a causal connection between her protected activities and her January 2022 suspension. Dkt. 58 at 11–13. Ms. Granger argues that CATS's explanation for her suspension—failure to report accidents—is pretextual "in light of its treatment" of Mr. Wiggins and that there was "suspicious timing" between her protected activities and her suspension. Dkt. 50 at 19–20.

To demonstrate a "causal connection," a plaintiff must show that the employer "would not have taken the adverse . . . action but for [the plaintiff's] protected activity." *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). Direct evidence is "sufficient but rare." *Baines*, 863 F.3d at 661. A plaintiff can also establish the causal link "through circumstantial evidence from which a jury may infer intentional discrimination." *Id.* at 661. Circumstantial evidence typically takes three forms: "(1) suspicious timing, ambiguous statements, behavior towards other employees . . . ; (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently," or (3) evidence of pretext. *Volovsek v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003).

"[C]omparator evidence can be relevant in showing retaliation" via circumstantial evidence. *Coleman*, 667 F.3d at 681 n.9 (citing *Volovsek*, 344 F.3d at 689). However, its relevance depends on whether that comparator "ever

complained of unlawful discrimination." *Id.* Here, "the record is simply silent," *id.*, as to whether Mr. Wiggins—Ms. Granger's only proposed comparator for this claim—ever complained of unlawful discrimination. So, Mr. Wiggins cannot be used as a comparator for Ms. Granger's retaliation claim. *See Volovsek*, 344 F.3d at 692 n.8 (framing the relevant comparator inquiry in a retaliation claim as whether "a similarly situated employee who did not file discrimination complaints" did not suffer the same adverse action).

Ms. Granger also offers "suspicious timing" to support a causal connection. But her 2022 suspension occurred years after her protected activities in 2018 and 2019. "That interval, standing alone, is too long" to support an inference of causation. *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000) (one year gap too long to infer causation); *see also, e.g.*, *Filipovic v. K&R Exp. Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four months); *Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001) (year and a half). But even if those events were sufficiently close in time, "temporal proximity alone is 'rarely sufficient' to establish causation." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)). Ms. Granger offers nothing else to support a causal connection, so no reasonable jury could infer one here. *See Coleman*, 667 F.3d at 861 (explaining that "an interval of a few weeks or even months may provide probative evidence of the required causal nexus" when there is other "corroborating evidence of retaliatory motive").

25

In sum, Ms. Granger has not designated evidence from which a reasonable jury could infer a causal connection between her 2022 suspension and her earlier protected activities.  Accordingly, CATS's motion for summary judgment as to Ms. Granger's retaliation claim is **granted**.

### IV.
### Conclusion

CATS's motion for summary judgment on Ms. Granger's disparate treatment, hostile work environment, and retaliation claims is **GRANTED.** Dkt. [40].  Final Judgment shall issue in a separate entry.

**SO ORDERED.**

Date: 11/17/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel